## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

KANDY MCDONALD,

    **Plaintiff,**

**v.**

**REGIONS BANK (INC.)
(ALABAMA),**

    **Defendant.**

**CIVIL ACTION FILE**

**NO. 1:20-cv-04650-ELR-AJB**

## UNITED STATES MAGISTRATE JUDGE'S
## FINAL REPORT AND RECOMMENDATION

In this action, Plaintiff Kandy McDonald asserts claims against her former

employer, Defendant Regions Bank (Inc.) (Alabama) (hereinafter "Regions Bank"

or "Defendant"), under the Americans with Disabilities Act ("ADA"), as amended,

42 U.S.C. § 12101 et seq.; the Age Discrimination in Employment Act of 1967

("ADEA"), as amended, 29 U.S.C. § 621 et seq.; and Title VII of the Civil Rights

Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq., and for

defamation and intentional infliction of emotional distress.  [*See generally* Doc. 1;

Doc. 13].  The matter is presently before the Court on a motion to dismiss the

complaint, [Doc. 11], and a motion to dismiss the amended complaint, [Doc. 17], both filed by Defendant pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons set forth below, the undersigned **RECOMMENDS** that the motion to dismiss the original complaint, [Doc. 11], be **DENIED AS MOOT**; that the motion to dismiss the amended complaint, [Doc. 17], be **GRANTED** as to Plaintiff's federal claims; and that the state-law claims be dismissed without prejudice.

## I.    <u>LEGAL STANDARD</u>

To avoid dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the factual allegations of a complaint must generally be taken as true when ruling on a motion to dismiss, a court should not accept "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). While a complaint need not contain detailed factual allegations, mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *accord Iqbal*, 556 U.S. at 678-79 ("Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and are "not entitled to the assumption of truth."). Rather, plaintiffs are required to make factual allegations that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Complaints must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (internal quotation marks omitted). The court also may dismiss a claim pursuant to Rule 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

## II.   BACKGROUND

### A.   Facts[1]

Plaintiff began working for Regions Bank in 1980. [Doc. 13 ¶¶ 2, 48]. Over the years, she advanced to the position of senior vice president and consumer

---

[1]   As set forth above, *see supra* Part I, the undersigned presumes that the well-pleaded facts set forth in the amended complaint are true but does not presume the truth of legal conclusions cast in the form of factual allegations.

banking manager, where she managed and supervised multiple banks in her region. [*Id*. ¶ 52].

On August 7, 2019, Plaintiff fell and fractured a toe, which required surgery. [*Id*. ¶ 53].  To aid in the healing process after surgery, she was required to wear an air boot.  [*Id*. ¶ 55].  The boot severely limited her mobility and prevented her from being able to drive, so she began working from home.  [*Id*. ¶¶ 55, 58].

On August 26, 2019, Plaintiff received a telephone call from her manager requesting that she submit a request for an accommodation to work from home. [*Id*. ¶ 59].  The same day, Plaintiff was part of a group e-mail chain with her supervisor and eleven other employees regarding printing instructions. [*Id*. ¶¶ 61-63; *id*. at 64].[2, 3]  Upon receipt the e-mail, Plaintiff's supervisor sent a

---

[2]      Exhibits attached to a complaint "are considered part of the pleadings for all purposes," including a Rule 12(b)(6) motion.  *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007); *Solis-Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985).  Where the exhibits contradict or clarify factual allegations asserted the body of a complaint, the Court relies on the exhibits. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations.  Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.").

[3]      While Plaintiff erroneously cites the e-mail chain as Exhibit 3 in another portion of the complaint, [*id*. ¶ 137], it is clear that she intended to reference Exhibit 10, [Doc. 13 at 64], throughout when referring to the August 26 e-mail.

reply-all message in which she wrote, "Oh my????? I print all day-LOL"; a fellow employee, Roslyn Gilstrap, then sent a reply-all message in which she wrote, "I may have to ask for a Special Accommodation since I'm old! Lol"; to which Plaintiff's supervisor sent another reply-all message in which she wrote, "I have the form ready if anyone needs it-LOL." [*Id.* ¶¶ 61-63, 136-42; *id.* at 64].

The following day, Plaintiff's supervisor asked a colleague to drive Plaintiff to a lunch meeting scheduled for September 10, 2019, since Plaintiff "can still not drive." [*Id.* ¶ 64; *id.* at 66]. Plaintiff responded that she would get her own transportation and would make it work. [*Id.* ¶ 65; *id.* at 66]. On another occasion, the supervisor said to Plaintiff, with others present, that "if any employee was in jeopardy of losing their job, . . . the employee should get someone to push them down the stairs." [*Id.* ¶ 73].

On September 3, 2019, Plaintiff began working from the office again and arranged for family members or colleagues to drive her to and from the various branches. [*Id.* ¶ 75]. On September 10, 2019, Plaintiff was granted an accommodation where she could work remotely from home and would not be required to drive for work through the end of October 2019. [*Id.* ¶ 78].

On October 16, 2019, while Plaintiff was still on the work-from-home accommodation, Defendant terminated her employment, purportedly due to a

5

violation of company privacy policies.  [*Id*. ¶¶ 79-80].  She was fifty-eight years old.  [*Id*. ¶ 82].

### B.  Administrative History

Plaintiff filed an initial inquiry with the Equal Employment Opportunity Commission ("EEOC") on Friday, April 10, 2020.[4]  [*Id*. ¶ 9].  In blanks on the inquiry form, she stated that Regions Bank was her employer; that the incident giving rise to her inquiry took place on October 16, 2019; and that the incident pertained to her age and disability.  [*Id*. at 32-33].  She also included a brief narrative in the section of the form that asked for a description of the adverse action:

> On October 16, 2019 I was terminated from my employer of 39+ years.  The termination was based on a complaint filed against me by my daughter in retaliation for an ongoing personal matter.  I feel Regions Bank used this complaint as an opportunity to terminate me based on my age and recent and active special accommodation under the ADA.  Prior to October 16, 2019, I was overlooked for challenging work assignments and was subject to disability related comments and/or insults.

[*Id*. at 34].  At 11:50 a.m. on the same day, Plaintiff also sent an e-mail to info@eeoc.gov, the only e-mail address she could find on the EEOC's website, by which she requested a telephone interview regarding her case and "an extension of

---

[4]     The matter was assigned Inquiry No. 410-2020-04959.  [Doc. 13 at 32].

[her] filing [sic] due to the inability to schedule and/or contact appropriate individuals/departments."  [*Id*. ¶ 10; *id*. at 36].

The next business day, Monday, April 13, 2020, at 11:43 a.m., the EEOC sent Plaintiff an e-mail in which it reminded her to schedule an interview regarding her inquiry; recommended visiting the agency's portal to provide additional information about the inquiry; cautioned that "**ANSWERING THESE QUESTIONS IS NOT THE SAME AS FILING A CHARGE OF DISCRIMINATION**"; and explained that "[a] charge of discrimination is a signed statement asserting that an organization engaged in employment discrimination [and] request[ing] EEOC to take remedial action," that it was necessary to file a charge before filing a lawsuit for unlawful discrimination, and that "[t]here are strict time limits for filing a charge."  [*Id*. ¶¶ 20, 21; *id*. at 38-39].  Later that day, at 1:18 p.m., Plaintiff wrote back,

> EEOC –
>
> I am unable to schedule an interview (the online site shows "no dates are available") and I'm unable to reach anyone by phone (1-866-408-8075); messages have been left.  I am on a very strict time deadline to speak with someone regarding my case #410-2020-04959. I am hoping with the State of Emergency (COVID-19 Pandemic)

allowances will be granted to work around these time constraints and strict deadlines.

Please advise.

[*Id*. ¶ 22; *id*. at 38].

The following day, Tuesday, April 14, 2020, at 1:35 p.m., the EEOC sent a follow-up e-mail to Plaintiff in which it stated that its records showed that she had filed an inquiry on its public portal but that she had not filed a charge. [*Id*. at ¶ 24; *id*. at 42]. The notice further stated that "[t]here are strict time limits to filing a charge" and that her time limit may have already expired. [*Id*. at 42]. The notice additionally directed that if Plaintiff wished to proceed with a charge, she must complete and return attached charge and pre-charge inquiry forms before the time limit expired. [*Id*. ¶ 25; *id*. at 42]. At 2:11 p.m., Plaintiff wrote back,

> Thank you for responding. I filed the inquiry on Friday, April 10, 2020 and due to the strict time limits, I tried calling that day as well as emailing. I also called and emailed yesterday, April 13, 2020. My 180 days expired yesterday – I was hoping to speak with someone by end of day yesterday to discuss my case. At this point, is there any point in completing the attached forms and/or speaking with someone?

[*Id*. at 42].

The following morning, on April 15, 2020, at 7:51 a.m., a representative of the EEOC replied to Plaintiff with an email chain stating that because Plaintiff had reached out to the EEOC on April 10, it would accept her forms as timely.

8

[*Id*. ¶ 29-31, 33; *id*. at 41].   Plaintiff then submitted the charge and pre-charge

inquiry forms the following day, on April 16, 2020, at 2:53 p.m.   [*Id*. ¶ 35-37;

*id*. at 41].   In the charge, Plaintiff checked the boxes indicating that Defendant

discriminated against her on the basis of age and disability.   [*Id*. at 45].   In the

section of the form that asked what happened that she believed was discriminatory,

Plaintiff wrote,

> My 10-16-19 termination for an egregious complaint was used as an
> opportunity to end my employment of 39+ years based on my age.
> Since 2018, I had been overlooked for challenging work assignments
> and job opportunities afforded to younger associates.  My replacement
> hired within weeks of my termination was a younger associate as well
> as two additional hires [sic].  On 8-26-2019, I was subject to disability
> related comments through email correspondence that was shared with
> my peers.

[*Id*. at 45, 52].   On July 31, 2020, Plaintiff filed an amended charge of

discrimination in which she again checked the boxes indicating that Defendant

discriminated against her on the basis of age and disability.   [*Id*. ¶ 40; *id*. at 58].   In

the particulars of the amended charge, she wrote,

> I was hired by the above-named employer on June 23, 1980, and most
> recently employed as a Consumer Banking Manager.  In or about
> August 2019, I suffered an injury due to a fall that resulted in surgery.
> I worked remotely from home until I returned to work until [sic]
> September 2019.  On October 16, 2019, shortly after I returned to
> work I was discharged, and a younger employee was placed in my
> position.

I was told I was discharged because of a company confidentiality violation.   Specifically, for accessing my daughters [sic] and granddaughter's banking records.

I believe I was discriminated against because of my age (58), in violation of the Age Discrimination in Employment Act of 1967, as amended and because of my disability . . . , in violation of the Americans with Disabilities Act of 1990, as amended.

[*Id*. ¶ 40; *id*. at 58].   The EEOC issued a dismissal and notice of rights on August 17, 2020, in which it stated that based upon its investigation, it was unable to conclude that the information it had obtained established violations of the federal employment-discrimination statutes.  [*Id*. ¶ 41; *id*. at 60].

## III.    **MOTION TO DISMISS THE ORIGINAL COMPLAINT**

Plaintiff, proceeding through counsel, initiated this action by complaint on November 13, 2020.  [Doc. 1].  Defendant timely responded to the complaint on December 31, 2020, with a motion to dismiss.  [Doc. 11].  Fourteen days later, on January 14, 2021, Plaintiff filed an amended complaint.  [Doc. 13].

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend her pleading once as a matter of course within twenty-one days after serving it or within twenty-one days after service of a motion under Rule 12(b)(6). Fed. R. Civ. P. 15(a)(1).   Since Plaintiff filed her amended complaint within twenty-one days after Defendant's first motion to dismiss, the amended complaint was properly filed as a matter of course.  *See* Fed. R. Civ. P. 15(a)(1)(B); *Henley v.*

*Turner Broad. Sys., Inc*., 267 F. Supp. 3d 1341, 1363 (N.D. Ga. 2017).  Moreover, Defendant did not object to Plaintiff's having filed the amended complaint as a matter of course.  (*See* Dkt).  The Court therefore accepts the amended complaint, [Doc. 13], as the operative complaint in this matter.

In light of Plaintiff's having filed the amended complaint, the undersigned concludes that the motion to dismiss the original complaint should be denied as moot.  [Doc. 11].  Plaintiff's amended complaint supersedes the original complaint. *See Malowney v. Fed. Collection Deposit Grp*., 193 F.3d 1342, 1345 n.1 (11th Cir. 1999) ("An amended complaint supersedes an original complaint."); *Varnes v. Local 91, Glass Bottle Blowers Ass'n*, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982) ("As a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading.").  Further, the amended complaint renders moot the motion to dismiss the original complaint because that motion seeks to dismiss a pleading that has been superseded.  *Solvay Specialty Polymers USA, LLC v. Zhenguo (Leo) Liu*, 331 F.R.D. 187, 189 n.2 (N.D. Ga. 2019) (Ross, J.) (citing *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007)); *S. Pilot Ins. Co. v. CECS, Inc*., 15 F. Supp.3d 1284, 1287 n.1 (N.D. Ga. 2013) (Totenberg, J.) (citing *Dresdner*

11

*Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11ᵗʰ Cir. 2006); *Fritz v. Standard Sec. Life Ins. Co.*, 676 F.2d 1356, 1358 (11ᵗʰ Cir. 1982)).

Because the motion to dismiss the original complaint seeks to dismiss a pleading that has been superseded, the undersigned **RECOMMENDS** to the District Judge that she **DENY AS MOOT** the motion to dismiss the original complaint.  [Doc. 11].

## IV.   MOTION TO DISMISS THE AMENDED COMPLAINT

On February 4, 2021, Defendant filed a motion to dismiss the amended complaint.  [Doc. 17].  On February 18, 2021, Plaintiff filed a response brief in opposition to the motion to dismiss, [Doc. 21 (incorporating by reference [Doc. 14])], and on March 4, 2021, Defendant filed a reply brief in support of its motion, [Doc. 22].

### A.   Administrative Exhaustion of Discrimination Claims

Defendant argues that Plaintiff's discrimination claims—the claims asserted under Title VII, the ADA, and the ADEA—are all due to be dismissed because Plaintiff failed to timely exhaust them at the administrative level prior to filing suit. [Doc. 17-1 at 9-12, 17-18, 20-23].  Before filing suit under Title VII, the ADA, or the ADEA, a plaintiff must exhaust her administrative remedies by filing a charge with the EEOC within 180 days after the alleged unlawful practice.

12

42 U.S.C. § 2000e-5(e)(1) (providing that a plaintiff must file a Title VII charge within 180 days after the alleged unlawful employment practice occurred); 42 U.S.C. § 12117(a) (applying Title VII's remedies and procedures to claims asserted under the ADA); 29 U.S.C. § 626(d) (providing that a plaintiff must file a ADEA charge within 180 days after the alleged unlawful employment practice); 29 C.F.R. § 1640.5 (providing that an EEOC charge alleging ADA violations is timely filed when it is received by the EEOC within 180 days after the alleged unlawful practice occurred).

Courts are extremely reluctant to allow procedural technicalities to bar employment-discrimination claims. *Gregory v. Ga. Dep't of Human Res*., 355 F.3d 1277, 1280 (11ᵗʰ Cir. 2004) (per curiam).  Nevertheless, the exhaustion requirement serves an important role by providing the EEOC "the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Id*. at 1279. The time limitation is intended to encourage a potential claimant to raise her discrimination claim before it becomes stale, both to better ensure a reliable result and to more quickly eradicate any illegal employment practice that may indeed exist. *Edelman v. Lynchburg Coll*., 535 U.S. 106, 112-13 (2002).  Thus, where a plaintiff fails to timely file an EEOC charge, her claims may be subject to dismissal.

*Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 n.6 (1984) (per curiam); *E.E.O.C. v. Summer Classics, Inc.*, 471 Fed. Appx. 868, 870 (11th Cir. June 12, 2012) (per curiam); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001); *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 662 (11th Cir. 1993); *Stafford v. Muscogee Cnty. Bd. of Educ.*, 688 F.2d 1383, 1389 (11th Cir. 1982).  The plaintiff bears the burden of showing that she has satisfied the conditions precedent to filing suit.  *Maynard  v. Pneumatic Prods. Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001); *Ross*, 980 F.2d at 661.

### 1.    Arguments

In support of its argument that Plaintiff's discrimination claims should be dismissed for lack of timely administrative exhaustion, Defendant contends that because Plaintiff has alleged that Defendant unlawfully terminated her employment on October 16, 2019, [Doc. 13 ¶ 79], she was therefore required to file a charge of discrimination with the EEOC no later than 180 days later—by April 13, 2020. [Doc. 17-1 at 10].  It argues that because Plaintiff did not file a completed charge form until April 16, 2020, [Doc. 13 ¶¶ 33, 37], the charge is untimely and the discrimination claims are therefore subject to dismissal.  [Doc. 17-1 at 11-12].

In response, Plaintiff admits that she had until April 13, 2020, to file her charge of discrimination before the statutory deadline passed.  [Doc. 14 at 12].  She

argues, however, that the Court should find her case analogous to *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008), and thus construe the initial inquiry she filed with the EEOC on April 10, 2020, as a charge of discrimination for timeliness purposes and consider any subsequent filings as amendments to the charge.  [Doc. 14 at 9-11; Doc. 21 at 2-3].  Plaintiff argues in the alternative that if the Court finds the April 10 filing was not a charge of discrimination, it should find that the charge deadline was equitably tolled because of the extraordinary circumstances of the shelter-in-place order issued as a consequence of the COVID-19 pandemic and because the EEOC accepted and investigated her charge. [Doc. 13 ¶¶ 11-19, 38; Doc. 14 at 11-15; Doc. 21 at 3-5].

In reply, Defendant concedes that in some circumstances, information provided by a plaintiff in an EEOC intake questionnaire may satisfy the requirements for an EEOC charge, but it argues that Plaintiff's April 10 inquiry does not satisfy the requirements.  [Doc. 22 at 2-9].  Defendant further argues that it was Plaintiff's own negligence—not the COVID-19 pandemic—that caused Plaintiff's charge to be late and that equitable tolling therefore is not warranted, the EEOC's acceptance of the late filing notwithstanding.  [*Id*. at 9-15].

15

### 2.    Analysis

For the reasons that follow, the undersigned finds that Plaintiff did not plead facts showing that she timely filed a charge a discrimination or that equitable tolling is warranted in this case.  It is therefore **RECOMMENDED** that the District Judge **GRANT** the motion to dismiss the claims Plaintiff asserts under the ADA, Title VII, and the ADEA.

### a)    Construing Pre-Deadline Filings as a Charge

It is undisputed that Plaintiff did not timely file the EEOC's prototypical charge-of-discrimination form until April 16, 2020, three days after the statutory deadline.  [*See* Doc. 13 ¶¶ 33, 35; *id.* at 45; Doc. 14 at 12].  Nevertheless, her civil action may still survive if the documents she submitted to the EEOC before the expiration of the statutory deadline can be reasonably construed as an EEOC charge. *See Holowecki*, 552 U.S. at 402 (ADEA); *Wilkerson*, 270 F.3d at 1318-20 (Title VII).

The definition of "charge" differs somewhat, depending on whether the plaintiff asserts claims under the ADA (using Title VII's framework) or the ADEA. *Chesnut v. Ethan Allen Retail, Inc.*, 971 F. Supp. 2d 1223, 1232-33 & n.12 (N.D. Ga. 2013) (Batten, J.).  The requirement at issue here, however, applies to claims asserted under the ADA, Title VII, or the ADEA: the EEOC communication

16

the plaintiff wishes to have construed as a charge of discrimination must be reasonably perceived to request that the EEOC pursue substantive relief on the employee's behalf. [Doc. 14 at 9-10 (citing *Holowecki*, 552 U.S. at 404 ("[A] filing is deemed a charge [for the purposes of the ADEA] if the document reasonably can be construed to request agency action and appropriate relief on the employee's behalf.")); Doc. 22 at 4-5 (citing *Holowecki*, 552 U.S. at 401-05)]; *Wilkerson*, 270 F.3d at 1320 ("To determine whether the [documents filed with the EEOC prior to the statutory deadline] can function as a charge, we must ask the following question:  Would the circumstances of this case convince a reasonable person that [the plaintiff] manifested her intent to activate the machinery of Title VII" by filing them?").  Plaintiff argues that the communications she sent to the EEOC prior to the statutory deadline, like those in *Holowecki*, can be reasonably construed to request agency action and relief.  [Doc. 14 at 9-11].  Defendant argues that Plaintiff's pre-deadline filings are different from the filings in *Holowecki* in that Plaintiff's filings did not contain the crucial request that the agency activate its machinery and remedial process and thus that the filings should not be construed as a charge of discrimination.  [Doc. 22 at 3-9].

After careful consideration, the undersigned is persuaded that the documents Plaintiff sent to the EEOC prior to the statutory deadline cannot be construed as

making a request for the EEOC to take any action to protect Plaintiff's rights and that *Holowecki* is therefore distinguishable. In *Holowecki*, the plaintiff supplemented his intake questionnaire with a six-page affidavit, which he ended by asking the agency to "[p]lease force [the employer] to end their age discrimination plan so we can finish out our careers absent the unfairness and hostile work environment." *Holowecki*, 552 U.S. at 405. Finding that the affidavit was a request for the EEOC to take remedial action to protect the plaintiff's rights or otherwise settle a dispute between the employer and the plaintiff, the Court held that the plaintiff's responses to the intake questionnaire plus the affidavit were properly construed as a request for the EEOC to act and thus constituted a charge. *Id*. at 405-06.

Here, in contrast, in the initial inquiry Plaintiff filed with the EEOC on April 10, 2020, she named her employer; stated the date of the incident giving rise to her inquiry; and briefly explained why she believed the incident was a result of unlawful discrimination. [Doc. 13 ¶ 9; *Id*. at 32-34]. In an e-mail she sent to info@eeoc.gov later the same day, she requested a telephone interview regarding her case and an extension of her filing deadline. [*Id*. ¶ 10; *id*. at 36]. When the EEOC sent her an e-mail on the day of the statutory deadline in which it reminded her to schedule an interview regarding the inquiry, encouraged her to provide

additional information about the inquiry, explained that an EEOC charge must contain a request for remedial action, cautioned her that she had not yet filed a charge, and reminded her of the strict deadlines for filing a charge, [*id*. ¶¶ 20, 21; *id*. at 38-39], Plaintiff reiterated that she wanted to speak to someone regarding her case and stated her hope that she would be allowed a filing extension, [*id*. ¶ 22; *id*. at 38].  It is clear from these messages that Plaintiff knew that she was up against the deadline for filing her EEOC charge, knew that a document would be a "charge" only if it requested remedial action, and knew that she had not yet filed a charge, but that she did not file a formal charge or make a request for remedial action; instead, she requested an opportunity to talk with an EEOC employee and hoped for an extension of the deadline for filing her charge.  [*See* Doc. 13 ¶¶ 10, 22; *id*. at 32-34, 36, 38].   This is clearly insufficient to establish a charge under *Holowecki.*

As Defendant aptly points out, in *Holowecki*, the Supreme Court rejected the proposition that a plaintiff's "charge need contain only an allegation of discrimination and the name of the employer," reasoning that the agency needed a mechanism to separate information requests from enforcement requests and that if the communications did not include a request for remedial action to settle a dispute with the employer, individuals who approach the agency with questions could end

19

up inadvertently filing a charge. *Holowecki*, 552 U.S. at 401.  The Court reasoned further that this was likely to happen to "anyone who completes an Intake Questionnaire—which provides space to indicate the name and address of the offending employer and asks the individual to answer the question, 'What action was taken against you that you believe to be discrimination?' "  *Id*.  Plaintiff's pre-deadline communications with the EEOC did not request remedial action and therefore were indistinguishable from a request for information.

For these reasons, the undersigned finds that Plaintiff has not pleaded facts showing that the materials she submitted to the EEOC prior to the statutory deadline constituted an EEOC charge and that she therefore timely exhausted the claims she seeks to raise under Title VII, the ADA, and the ADEA.

### b)      Equitable Tolling of the Statutory Deadline

The failure to timely file a charge is not necessarily fatal to Plaintiff's discrimination claims since the timely filing requirement is non-jurisdictional and therefore may be subject to equitable tolling. *Bourne v. Sch. Bd. of Broward Cnty*., 508 Fed. Appx. 907, 909 (11th Cir. Feb. 1, 2013) (citing *Zipes v. Trans World Airlines, Inc*., 455 U.S. 385, 393 (1982)).  However, "[e]quitable tolling is an extraordinary remedy which should be extended only sparingly" and is not appropriate where a plaintiff fails to act with due diligence or is negligent. *Bost v.*

Case 1:20-cv-04650-ELR   Document 25   Filed 06/03/21   Page 21 of 26

*Fed. Express Corp.*, 372 F.3d 1233, 1242 (11ᵗʰ Cir. 2004); *accord Bryant v. U.S. Dep't of Agric.*, 967 F.2d 501, 504 (11ᵗʰ Cir. 1992) ("[W]here the plaintiff's failure to file was caused by plaintiff's own negligence, the limitations period will not be equitably tolled.").  "A court may toll a statute of limitations only if it finds that an inequitable event prevented the plaintiff from filing a timely action."  *Chavez v. Credit Nation Auto Sales, Inc*., 966 F. Supp 2d 1335, 1347 (N.D. Ga. 2013) (citing *Justice v. United States*, 6 F.3d 1474, 1479 (11ᵗʰ Cir. 1993)).

Equitable tolling is "generally warranted where the plaintiff fails to file on time because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence."  *Scott v. Piedmont Columbus Reg'l Hosp*., 806 Fed. Appx. 954, 955 (11ᵗʰ Cir. May 11, 2020) (citing *Arce v. Garcia*, 434 F.3d 1254, 1261 (11ᵗʰ Cir. 2006)).  " '[T]raditional equitable tolling principles require a claimant to justify her untimely filing by a showing of extraordinary circumstances,' such as fraud, misinformation, or deliberate concealment."  *Bourne*, 508 Fed. Appx. at 910 (quoting *Jackson v. Astrue*, 506 F.3d 1349, 1353 (11ᵗʰ Cir. 2007)).  The Eleventh Circuit also recognizes that the limitation period may be equitably tolled when the EEOC misleads the complainant about the nature of her statutory rights.  *Jones v. Wynne*, 266 Fed. Appx. 903, 906

21

(11th Cir. Feb. 26, 2008)   (citing   *Chappell   v.   Emco   Mach.   Works   Co.*, 601 F.2d 1295, 1302-03 (5th Cir. 1979)[5]).

Viewing Plaintiff's allegations as true and in the light most favorable to her, they do not show extraordinary circumstances warranting the exceptional remedy of equitable tolling.  First, the EEOC's acceptance of charge does not establish that equitable tolling is appropriate; instead, the court must undertake its own evaluation of whether to apply equitable tolling.  *Chappell*, 601 F.2d at 1304.

Second, Plaintiff has not pleaded any facts indicating any fraud or concealment by the EEOC.  The next business day after Plaintiff filed her inquiry, the EEOC sent her an e-mail directing her to schedule an interview, explaining that if she did not, it would not take any action on Plaintiff's inquiry; notified her that a charge of discrimination is a signed statement asserting that an organization engaged in employment discrimination and requesting that the EEOC take remedial action; stated that it would be necessary to file a charge prior to filing a lawsuit; and reminded her that there are strict time limits for filing a charge. [Doc. 13 at 38-39].  The day after that, the EEOC sent Plaintiff a follow-up e-mail

---

[5]      In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

reiterating that there are strict deadlines for filing a charge, that she had not yet filed a charge, and that her time might have already expired.  [*Id*. at 42].  And although the EEOC did send an e-mail to Plaintiff on April 15, 2020, stating that it would accept Plaintiff's charge as timely, the e-mail could not have misled Plaintiff regarding her charge deadline, since the statement was sent two days *after* the charging deadline.  [*Id*. at 41].

Third, Plaintiff has not pleaded facts showing that circumstances beyond her control prevented her from timely filing.  The global COVID-19 pandemic and the attendant "stay at home orders" certainly created an extraordinary circumstance. [*See id*. ¶¶ 11-19].  Plaintiff has, not, however, pleaded facts indicating that it was the pandemic that caused her to miss the deadline for filing her EEOC charge. Instead, Plaintiff's pleadings show that she waited until the last business day before the charge deadline to contact the EEOC.  [*Id*. ¶¶ 9-10, 79; *id*. at 32-34, 36; Doc. 14 at 14].  Common sense dictates that under any circumstances, such late contact would be highly unlikely to result in a timely filed charge.  And notably, Plaintiff does not point to any case law suggesting that her conduct amounted to reasonable diligence. [*See generally* Docs. 14, 21].

The evidence Plaintiff attached to her complaint also undermines her suggestion that the pandemic-related shutdowns caused the EEOC to be

unavailable.  In fact, the filings show that the EEOC responded to Plaintiff's inquiry the first business day after she filed it and corresponded with her over the next two days.  [Doc. 13 at 32, 36, 38, 41-42].

Finally, the Court notes that even after Plaintiff inarguably had the proper forms in hand, she waited an additional two days to submit them.  Plaintiff's exhibits show that on April 14, 2020, at 1:35 p.m., a representative of the EEOC e-mailed Plaintiff a charge inquiry form and charge form, reminded her of the strict time limits for filing, and noted that the EEOC would take no action on her behalf unless she returned the forms, [*id*. at 42], and that Plaintiff responded not with the completed forms but rather with an e-mail asking whether there was "any point in completing the attached forms" or speaking with someone, since the deadline had run, [*id*.].  Furthermore, after the EEOC notified her that it would accept the late forms, Plaintiff waited *another* thirty-one hours to submit them.  [*Id*. at 41].

For all of these reasons, the undersigned cannot conclude that Plaintiff acted with due diligence and that equitable tolling should apply.

### B.   State-Law Claims

When a federal court has dismissed all of the federal claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over

any remaining state-law claims.[6]   28 U.S.C. § 1367(c); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (encouraging district courts to dismiss any remaining state claims when the federal claims have been dismissed prior to trial). Indeed, the Supreme Court has directed lower federal courts to avoid "[n]eedless decisions of state law," especially when federal claims are dismissed before trial. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).   Here, the undersigned has recommended dismissing Plaintiff's federal claims, and the remaining claims involve decisions of state law.   Accordingly, the Court **RECOMMENDS** to the District Judge that she decline to exercise supplemental jurisdiction over Plaintiff's remaining claims and **DISMISS** them **WITHOUT PREJUDICE** so that Plaintiff may more appropriately pursue them in state court.

**V.     CONCLUSION**

For the reasons set forth above, the undersigned **RECOMMENDS** that the motion to dismiss the original complaint, [Doc. 11], be **DENIED AS MOOT**; that the motion to dismiss the amended complaint [Doc. 17], be **GRANTED** as to

---

[6]      Plaintiff asserted in the amended complaint that the Court has federal-question jurisdiction over this action and has supplemental jurisdiction over her state-law claims. [Doc. 13 ¶¶ 6, 7].   The pleadings contain no allegation that the Court has diversity-of-citizenship jurisdiction over the state-law claims. [*See id*.].

Plaintiff's federal claims; and that the state-law claims be **DISMISSED WITHOUT PREJUDICE**.

Because the matter presents no other issues referred to Magistrate Judges under Standing Order 18-01, the Clerk is **DIRECTED** to **TERMINATE REFERENCE** to the undersigned Magistrate Judge.

**IT IS SO DIRECTED AND RECOMMENDED**, this 3rd day of June, 2021.

**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

26